UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges O'Brien and Russell
Argued at Richmond, Virginia

MONTRIO SANTOS NEVILLE

v.      Record No. 1693-16-2

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION[*] BY
                                            JUDGE MARY GRACE O'BRIEN
MONTRIO SANTOS NEVILLE                      FEBRUARY 6, 2018

v.      Record No. 0217-17-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Christopher M. Bradshaw (Bradshaw & O'Connor, P.C., on brief),
for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Montrio Santos Neville ("appellant") was tried by a jury on charges of murder, conspiracy

to commit murder, distribution of heroin, possession of a firearm while distributing heroin, and use

of a firearm in the commission of a murder. At the close of the evidence, the court granted

appellant's motion to strike all of the charges except conspiracy to commit murder and distribution

of heroin. The jury acquitted appellant of conspiracy to commit murder, but convicted him of

distribution of heroin, in violation of Code § 18.2-248.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As a result of appellant's conviction, the court issued a show cause rule against him for violating his probation on previous, unrelated charges. Following a hearing, the court found appellant in violation of probation and imposed a period of his previously suspended sentence.

Appellant contends that the court erred in allowing the Commonwealth to introduce evidence of his nickname, the "Grim Reaper," during trial. Additionally, appellant asserts that because his probation violation was based on the heroin distribution conviction, the probation violation conviction also should be reversed.

BACKGROUND

Lyle McMurtray, a DEA informant, was shot and killed in Richmond while sitting in his parked car. At the time of his death, McMurtray was scheduled to testify against Xavier Hopkins ("Hopkins") and his brother, Thomas, in upcoming narcotics trials. When the police found his body, McMurtray was holding a plastic sandwich bag containing heroin. The outside of the bag had a DNA mixture that included appellant's DNA. At trial, the Commonwealth argued that McMurtray had contacted Hopkins to purchase heroin and Hopkins arranged for appellant to deliver the heroin to McMurtray and then kill him.

Cell phone data also linked appellant to the crimes charged. The last call McMurtray received, approximately one hour before his death, was from a cell phone that appellant admitted using. Additionally, appellant's girlfriend's cell phone was located near the crime scene. Appellant acknowledged that he had used his girlfriend's phone to communicate with Hopkins on the evening of the murder.

During a police interview, appellant stated that he had "one of the most famous nicknames around, 'Li'l O.'" When the officer asked if he had any other nicknames, appellant responded that "they also call me the Grim Reaper." Prior to trial, appellant filed a motion *in limine* to prohibit the

Commonwealth from introducing evidence that he had "previously been associated with the moniker 'The Grim Reaper.'" The court denied the motion.

At trial, appellant denied distributing heroin to McMurtray or killing him. He told the jury that on the day of the murder, Hopkins called and asked appellant to bring him sandwich bags. Appellant stated that he knew Hopkins was a drug dealer, and he thought that because Hopkins "sell[s] heroin," he was going to use the sandwich bags to package drugs. Appellant testified that he took the bags to Hopkins at a house about three blocks away, where appellant knew drugs were sold, and returned home.

When the Commonwealth introduced evidence of the "Grim Reaper" nickname, appellant objected because it was "inflammatory" and "show[s] that [appellant] kills people, that he's killed people in the past, which [makes it] more likely that he's killed somebody in this case." The court overruled the objection and denied appellant's subsequent motion for a mistrial. In his motion to strike at the conclusion of all the evidence, appellant reiterated that he was "being charged with murder" and that the nickname evidence would unfairly prejudice the "murder jury."

## DISCUSSION

Appellant contends that the "Grim Reaper" nickname is evidence of a prior bad act, offered only to establish that he had a greater propensity to commit the offenses for which he was charged. In the alternative, he argues that the nickname evidence was irrelevant and, therefore, inadmissible.

### A. Harmless Error

"The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010)). See also Commonwealth v. White, 293 Va. 411, 419-22, 799 S.E.2d 494, 498-500 (2017). In this case, the

best and narrowest ground is our conclusion that any error in admitting evidence of appellant's association with the "Grim Reaper" nickname was harmless. See Code § 8.01-678.

"In Virginia, non-constitutional error is harmless 'when it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01-678). Non-constitutional error is harmless if we determine that the error "did not 'influence the jury' or had only a 'slight effect.'" Carter v. Commonwealth, 293 Va. 537, 545, 800 S.E.2d 498, 502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Aponte v. Commonwealth, 68 Va. App. 146, 164, 804 S.E.2d 866, 875 (2017) (quoting Campos v. Commonwealth, 67 Va. App. 690, 717, 800 S.E.2d 174, 188 (2017)).

Absent the admission of appellant's nickname, we find the jury would have convicted appellant of distributing heroin because of the amount of incriminating evidence connecting him to the crime. Appellant admitted using the cell phone that placed the final call to McMurtray within an hour of the victim's death, and appellant also acknowledged communicating with Hopkins by another phone that was discovered near the murder scene. McMurtray was found holding a plastic bag of heroin, the outside of which contained appellant's DNA. Additionally, appellant provided plastic sandwich bags to a known drug distributor, Hopkins, at a location where appellant knew drugs were sold.

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437,

441 (2000); see also Rogers v. Commonwealth, 242 Va. 307, 317, 410 S.E.2d 621, 627 (1991) ("[A]ll necessary circumstances must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976))). We find that the circumstantial evidence of heroin distribution, taken as a whole, was sufficient to exclude every reasonable hypothesis of innocence.

Further, the verdict itself indicates that admission of the "Grim Reaper" evidence did not improperly affect the jury. See Aponte, 68 Va. App. at 165, 804 S.E.2d at 875 (finding harmless error when the court excluded evidence that precluded the defendant from arguing her conduct was not gross, wanton, and reckless, because the defendant was convicted of a lesser-included offense that did not contain these elements). Here, the jury acquitted appellant of conspiracy to commit murder, and only convicted him of heroin distribution. Thus, admission of the "Grim Reaper" nickname – evidence appellant contends was "inflammatory" because it would be used to show he was a killer, and would unfairly prejudice the "murder jury" – could "not have substantially influenced the jury and did not affect the ultimate result." Id.

From this record, we can conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Carter, 293 Va. at 546, 800 S.E.2d at 502 (quoting Adams v. Commonwealth, 275 Va. 260, 277-78, 657 S.E.2d 87, 97 (2008)). Had the evidence been excluded, the verdict on the charge of heroin distribution would have been the same, given the overwhelming evidence of appellant's guilt. Accordingly, any such error was harmless.

## B. Revocation of Probation

Appellant contends that the court erred in revoking his previously suspended sentences and imposing an additional period of incarceration, because the only basis for revocation was the erroneous conviction for heroin distribution. However, because we find that the jury properly

convicted appellant of heroin distribution, that conviction provided a legally sound basis to revoke appellant's probation. Accordingly, we find that the court did not err in convicting appellant of violating probation.

CONCLUSION

We hold that any error in admitting evidence of appellant's association with the "Grim Reaper" nickname was harmless. Therefore, we affirm appellant's conviction for distributing heroin, and his resulting conviction for violating probation.

<u>Affirmed.</u>